**UNITED STATES, Appellee,**

v.

**Darryl Q. MORGAN, Private
U.S. Army, Appellant.**

**No. 67,610.
CMR No. 8901706.**

U.S. Court of Military Appeals.

Argued March 3, 1993.

Decided Sept. 10, 1993.

For Appellant: *Richard D. Dvorak* (argued); *Jonathan P. Tomes, Captain David L. Thomas, Michael Sorensen* (law student) (on brief); *Captain Michael P. Moran* and *Martha A. Niles.*

For Appellee: *Captain Samuel J. Smith, Jr.* (argued); *Lieutenant Colonel Joseph A. Russelburg* and *Major Donna I. Barlett* (on brief); *Lieutenant Colonel Daniel J. Dell'Orto* and *Major Kenneth T. Grant.*

*Opinion of the Court*

COX, Judge:

Appellant stands convicted of offenses[1] arising from a bar fight in Mainz, Germany, including unpremeditated murder.

On January 6, 1989, appellant and some friends met at an apartment and began drinking alcoholic beverages before going to Charly's Club, a disco where appellant's girlfriend worked. Meanwhile, Specialist Jonathan Gray, Private Richard Livingston, and Private Joe Seitz (the deceased) drank several beers at a bar called Mainzer's before going to Charly's, which was nearby. Gray testified that, while Seitz was dancing with a girl at Charly's, he (Gray) noticed a black male—appellant—watching from the edge of the dance floor, as if he were angry. Seitz was apparently aware of appellant's watching and seemed to dance toward him. The next time Gray saw the two, appellant had evidently just shoved Seitz and began hitting Seitz while holding him in a headlock. The fight broke up quickly, and the two combatants left the bar with their companions. Once outside the bar, Gray noticed Seitz was bleeding and somewhat dazed. Gray went inside to get his coat and telephone a cab to take him (Seitz) and Livingston home. When Gray walked back outside, he heard Livingston yelling, that Seitz was dead; appellant was gone.

Private Livingston and a German friend of Private Seitz corroborated Gray's account of the events leading up to the incident. Livingston testified that he helped Seitz walk out to the parking lot after the fight on the dance floor. Livingston asked Seitz about the fight, and Seitz identified appellant as the one "who hit him." Livingston began yelling at appellant and told him to stay away from Seitz. When Livingston heard the sound of breaking glass, he prepared to defend himself because he had been shouting, but appellant went toward Seitz instead. Appellant thrust a broken bottle toward Seitz' neck. The blow severed the victim's carotid artery and embedded a piece of glass in his vertebra. Livingston tried to stop the flow of blood from Seitz' throat but was unsuccessful, and Seitz bled to death shortly thereafter. Specialist Lewis was talking with Seitz when Seitz was stabbed, and he testified Seitz never saw appellant coming toward him.

Later that night, appellant told a friend that he had "punched that mother f...... in the jaw, man." He appeared scared and repeatedly said he had "f...... up."

During trial, the defense requested two expert witnesses to testify that appellant's blood alcohol at the time of the incident was at a level which would impair an individual to the extent that he could not form the specific intent necessary for premeditated murder. When the charge was amended to reflect unpremeditated murder, the request was withdrawn. The defense also requested appellant be examined for mental disorders, but such a defense was not pursued. Appellant's case was based, rather, on self-defense, and three witnesses were called at trial. Appellant's girlfriend testified that Livingston called appellant a "nigger" and asked why he was "hiding behind a woman's skirt." Another defense witness, who did not see the fight but was in the parking lot, described Seitz as "aggressive." Appellant did not testify.

We granted review of the following issues:

I

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF

---

1. Appellant was tried by general court-martial of officer and enlisted members at Mainz, Germany. He pleaded guilty to being absent without leave for 8 days and pleaded not guilty to assault consummated by a battery and unpremeditated murder, in violation of Articles 86, 128, and 118, Uniform Code of Military Justice, 10 USC §§ 886, 928, and 918, respectively.

Upon conviction of these three offenses, appellant was sentenced to a dishonorable discharge, confinement for life, and total forfeitures. The convening authority approved the adjudged sentence, and the Court of Military Review affirmed the findings and sentence. 33 MJ 1055 (1991).

COUNSEL AS IS REQUIRED BY BOTH THE SIXTH AMENDMENT AND THE UNIFORM CODE OF MILITARY JUSTICE.

## II

WHETHER UNPREMEDITATED MURDER REQUIRES A SPECIFIC INTENT WHICH APPELLANT COULD NOT FORM DUE TO THE VOLUNTARY CONSUMPTION OF ALCOHOL.

## I

■ Before this Court, appellant contends he was denied effective assistance of counsel because trial defense counsel failed to investigate or present a potentially viable insanity defense arising from his personality disorder. Evidence of his personality disorder, maintains appellant, could also have been used in mitigation of his sentence. Further, he argues that trial defense counsel failed to require any instruction regarding the combined effect of alcohol and his personality disorder on his ability to entertain specific intent.

■ In evaluating appellant's claim, we must determine, first, whether trial defense counsel's performance fell below an objective standard of reasonableness and, second, whether any deficiencies were prejudicial to appellant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 MJ 186 (CMA 1987). While partial mental responsibility due to a personality disorder might have been a potential defense,[2] heavy deference is given to trial defense counsel's judgments, and this Court presumes counsel's conduct falls within the

wide range of reasonable professional assistance. 466 U.S. at 689, 104 S.Ct. at 2065. *See United States v. Stephenson*, 33 MJ 79, 82 (CMA 1991).

Counsel requested that appellant be examined for possible mental disorders, and such examination was conducted by Lieutenant Colonel Hanson on April 17, 1989. Trial defense counsel, under oath, made the following statement after trial about his conclusions regarding appellant's defense:

5. During the initial preparation of PVT Morgan's defense, we also as a matter of course requested the conduct of a psychiatric evaluation given the severity of the offense. Unfortunately, the preliminary information we received was so unhelpful and potentially so extremely damaging that we did not persist in efforts to secure a full sanity board or bring the evidence before the panel. Specifically, LTC Hanson did not merely state that a sanity board was not required, but *categorically rejected the notion that PVT Morgan was mentally impaired in any manner with or without the intake of alcohol that would have an impact on his ability to form specific intent or to possess the requisite mental responsibility for the crimes committed.*

6. In addition, PVT Morgan had an extensive file of potential admissions made to the Community Counseling Center that was in the possession of the government as well as threats to kill and other evidence of antisocial behavior that *LTC Hanson rejected as anything more than evidence of a violent young man.* The increased likelihood that such testi-

---

**2.** This Court has recognized that mental impairment falling short of legal insanity may cast doubt on an accused's ability to form specific intent. *United States v. Dunnahoe*, 6 USCMA 745, 21 CMR 67 (1956). Mental impairment is not an affirmative defense, but may be used to attack the *mens rea* element of the offense. *Ellis v. Jacob*, 26 MJ 90, 93 (CMA 1988). The doctrine of partial mental responsibility applies to unpremeditated murder. *United States v. Vaughn*, 23 USCMA 343, 346, 49 CMR 747, 750 (1975). *See generally United States v. Berri*, 33 MJ 337 (CMA 1991).

Appellant was diagnosed by Dr. Wellman as having both an adjustment-disorder conduct disturbance and a passive-aggressive personality disorder with antisocial features. Dr. Wellman recommended appellant be immediately administratively separated from the service or kept under "supervision with no access to alcohol or weapons." This evidence might have been presented as a partial mental responsibility defense attacking the requisite *mens rea* for unpremeditated murder; however, the defense chose not to open the door to evidence of appellant's personality traits.

mony would be elicited on cross-examination and become relevant tin evaluating the opinion of any favorable psychiatric evidence led us to conclude that the risks far outweighed the potential benefits from such marginally helpful testimony. *The wealth of available evidence to the contrary also led us not to adduce evidence of PVT Morgan's personality disorder on sentencing* so as not to jeopardize what we believed would be a more effective plea for leniency based on PVT Morgan's other favorable attributes.

(Emphasis added.)

Trial defense counsel's statement addresses his reasoning in not using partial mental responsibility or insanity as a defense, in mitigation of appellant's offense, or alone or in conjunction with intoxication in an attack on the *mens rea* element of the crime. "We will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Rivas*, 3 MJ 282, 289 (CMA 1977). *See also United States v. Stephenson*, 33 MJ at 82. Giving due deference to counsel's decisions, we are convicted that trial defense counsel's performance did not fall below "prevailing professional norms." *United States v. Scott*, 24 MJ at 188 (*citing United States v. DiCupe*, 21 MJ 440, 442 (CMA), *cert. denied*, 479 U.S. 826, 107 S.Ct.

101, 93 L.Ed.2d 52 (1986); *United States v. Jefferson*, 13 MJ 1, 5 (CMA 1982); *United States v. Rivas*, 3 MJ at 288); *see Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

## II

■ The second granted issue asks, somewhat academically, whether evidence of voluntary intoxication can be introduced to rebut the elements of proof of unpremeditated murder. *See* Art. 118(2), UCMJ, 10 USC § 918(2). Since the defense did not request an instruction on this matter or present expert testimony, the question more properly is whether the military judge erred in failing, *sua sponte*, to instruct the members that they might consider the lay evidence of record regarding appellant's possible state of inebriation on the night of the incident in arriving at their conclusion about his forming an intent to kill.[3] We will so construe it.

RCM 916(*l*)(2), Manual for Courts–Martial, United States, 1984, states the general rule for the partial defense of voluntary intoxication as follows:

Voluntary intoxication, whether caused by alcohol or drugs, is not a defense. However, evidence of any degree of voluntary intoxication may be introduced

---

3. Trial defense counsel made plain in his affidavit that he consciously elected not to press an intoxication defense due to its unlikelihood of success and the mass of aggravating information whose admission would thereby be triggered:

2. Considerable thought, research and discovery took place prior to deciding on the best defense available for PVT Morgan. Initially, as we faced a charge of premeditated murder, Captain Thomas and I sought to generate potential testimony based on PVT Morgan's state of intoxication that could support an argument to negate the requisite specific intent. Various German and American expert witnesses were interviewed on the subject. Several problems with this defense became quickly apparent, to include the ready availability of persuasive expert testimony to counter any suggestion that PVT Morgan could not form the necessary intent. Moreover, there was much available evidence that PVT Morgan had a high tolerance for alcohol, a factor to be considered in determining its effect.

There was also much dispute over the efficacy of any efforts to back date a blood alcohol rating when the blood sample was taken hours after the incident. Finally, and most importantly, considerable highly damaging evidence was available to describe PVT Morgan's conduct after the killing that the judge indicated might become admissible if testimony was elicited by the defense to cast doubt on PVT Morgan's intent. This included the fact that PVT Morgan apparently obtained a large knife from his girlfriend's apartment following the murder.

In addition, after the Government indicated it would not pursue a premeditated murder conviction, the defense abandoned voluntary intoxication. their reasoning was that, as voluntary intoxication was not a defense to unpremeditated murder, any mitigating value to be obtained by claiming intoxication was far outweighed by the potential for damage. Accordingly, the defense elected to adhere to self-defense as its primary theory of the case.

for the purpose of raising a reasonable doubt as to the existence of actual knowledge, specific intent, willfulness, or premeditated design to kill, if actual knowledge, specific intent, willfulness, or premeditated design to kill is an element of the offense.

*Cf.* § 2.08, ALI Model Penal Code, reprinted in *ALI Model Penal Code and Commentaries* (Part I) 353 (1985).

As it pertains to murder, however, the rule has long been otherwise:

Voluntary Intoxication (*see* RCM 916(1)(2)) not amounting to legal insanity may reduce premeditated murder (Article 118(1)) to unpremeditated murder (Article 118(2) or (3)) but it does not reduce either premeditated murder or unpremeditated murder to manslaughter (Article 119) or any other lesser offense.

Para. 43c(2)(c), Part IV, Manual, *supra; United States v. Ferguson,* 17 USCMA 441, 38 CMR 239 (1968); *United States v. Craig,* 2 USCMA 650, 10 CMR 148 (1953); and *United States v. Roman,* 1 USCMA 244, 2 CMR 150 (1952) [4].

As a point of beginning, we first must look at the elements of proof for unpremeditated murder. Paragraph 43b(2) provides the following elements of proof:

(2) *Intent to kill or inflict great bodily harm.*

(a) That a certain named or described person is dead;

(b) That the death resulted from the act or omission of the accused;

(c) That the killing was unlawful; and

(d) That, at the time of the killing, the accused had the *intent to kill or inflict great bodily harm* upon a person. (Emphasis added.)

In *United States v. Vaughn,* 23 USCMA 343, 49 CMR 747 (1975), we put to rest any question of whether unpremeditated murder was a specific-intent crime. We said:

[T]his Court clearly interprets the provisions of Article 118(2) to require an intent to kill or inflict grievous bodily harm and that no lesser or other state of mind will do. Indeed, as was said in *United States v. Thomas,* [17 USCMA 103, 37 C,R 367 (1967) ], we cannot do away with the express requirement of the statute and substitute some generalized mental process for that specifically and unequivocally set out by Congress. Absent, therefore, the subjective intent of the accused to kill or seriously harm his victim, the homicide he commits cannot be unpremeditated murder.

23 USCMA at 345, 49 CMR at 749.

However, *Vaughn* did not put to rest the question of whether voluntary intoxication was a defense to unpremeditated murder. In *United States v. Tilley,* 25 MJ 20 (CMA 1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988), then-Judge Sullivan, writing for an unanimous court, observed:

Another question which is raised in this unpremeditated-murder case is whether evidence of voluntary intoxi-

---

**4.** This Court, in *United States v. Roman,* 1 USC-MA 244, 250, 2 CMR 150, 156 (1952), relied on the reasoning set forth in *Bishop v. United States,* 107 F.2d 297 (1939), as follows:

Under the District of Columbia statute, a homicide committed purposely and with deliberate and premeditated malice is murder in the first degree. A homicide committed with malice aforethought, without deliberation and premeditation, is murder in the second degree....

Intoxication at common law was no defense to the crime of murder. It could neither justify an acquittal, nor reduce common law murder to manslaughter. From an early day to this hour, the law has declared that intoxication is not an excuse for the commission of a crime. While it has long been recognized

that intoxication *per se* is no defense to the fact of guilt, the stated condition of a defendant's mind at the time of the killing in respect of its ability to form the intent to kill, or if formed to deliberate and premeditate thereupon, is now a proper subject for consideration, inquiry, and determination by the jury. Thus, voluntary intoxication will not excuse murder, but it may negative the ability of the defendant to form the specific intent to kill, or the deliberation and premeditation necessary to constitute first degree murder, in which event there is a reduction to second degree murder.

Voluntary intoxication may not reduce murder to voluntary manslaughter, not permit an acquittal of murder....

*Id.* at 301–02 (footnotes omitted).

cation should ever be considered on the question of one's capacity to form the intent to kill or inflict great bodily harm. *See* 1 W. LaFave & A Scott, *Substantive Criminal Law* § 4.19(a) (1986); *cf.* 2 *Substantive Criminal Law* § 7.11(d). The Government, relying on older decisions of this Court, asserts that voluntary intoxication, as a matter of law, cannot reduce unpremeditated murder to manslaughter. *See United States v. Ferguson*, 17 USCMA 441, 38 CMR 239 (1968); *United States v. Craig*, 2 USCMA 650, 10 CMR 148 (1953); *United States v. Roman*, 1 USCMA 244, 2 CMR 150 (1952). *See also* para. 197, Manual [for Courts–Martial, United States, 1969 (Revised edition)]. Accordingly, it concludes that evidence of voluntary intoxication is legally irrelevant in all cases of unpremeditated murder. Mil.R.Evid. 402, Manual, *supra.* The defense, relying on *United States v. Thomson* [3 MJ 271, (CMA 1977)], and *United States v. Vaughn*, 23 USCMA 343, 49 CMR 747

(1975), suggests that the older decisions are no longer good law or are inapplicable to cases where evidence of voluntary intoxication does not stand alone.

25 MJ at 22.

In *Tilley*, we carefully reviewed all the instructions given by the military judge and concluded that the instructions made it "unnecessary for us to resolve this question." *Id.* Today, we are faced once again with the question—can voluntary intoxication defeat the capacity of an accused to entertain "the intent to kill or inflict great bodily harm" involved in unpremeditated murder (para. 43 b(2)(d))?

After careful consideration, we see no reason to overrule the long-standing decisions of this Court which have consistently held that *voluntary* intoxication will not in military law negate that criminal intent necessary for the commission of unpremeditated murder. *See United States v. Ferguson, United States v. Craig, United States v. Roman,* all *supra.* These cases have been followed for over 40 years.[5] The

---

5. The federal murder statute retains the essential common-law structure. All murder is defined as "the unlawful killing of a human being with malice aforethought." In addition, first degree murder encompasses the following:

> Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed....

Second degree murder includes every murder not included in first degree murder. 18 USC § 1111(a). First degree murder is punishable by death or life imprisonment. Second degree murder is punishable by imprisonment "for any term of years or for life." 18 USC § 1111(b). Under the federal scheme, voluntary intoxication is a defense to the "specific intent (willful, deliberate, malicious and premeditated)" component of first degree murder; it is not a defense to second degree murder or manslaughter. *United States v. Soundingsides,* 820 F.2d 1232, 1242 (10th Cir.1987); *Kane v. United States,* 399 F.2d 730, 736 (9th Cir.1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969).

When this Court first encountered voluntary intoxication as a potential defense to murder, it arose under Article of War (AW) 92, 10 USC § 1564, a forerunner to the Uniform Code. *United States v. Roman,* 1 USCMA at 249, 2 CMR at 155. AW 92 provided, in part:

> Any person subject to military law found guilty of murder shall suffer death or imprisonment for life, as a court-martial may direct; but if found guilty of murder not premeditated, he shall be punished as a court-martial may direct.

In line with federal authorities, we went

> no further than to announce a rule which will permit the court-martial to consider whether voluntary intoxication negates premeditation and reduces premeditated murder to unpremeditated murder. We do not conceive drunkenness as a mental condition which will reduce unpremeditated murder to manslaughter.

1 USCMA at 251, 2 CMR at 157.

Our next encounter with voluntary intoxication as a defense to murder arose under the Uniform Code. *United States v. Craig,* 2 USCMA 650, 10 CMR 148 (1953). Comparing AW 92 with Article 118 of the Uniform code, 2 USCMA at 657–58, 10 CMR at 155–56, we concluded that "Congress did not intent to change substantially the elements making up the crimes of murder." 2 USCMA at 658, 10 CMR at 156. Based upon the structure and language of Article 118, we construed the statute as not permitting volun-

law has been reflected in the language of the Manual for Courts–Martial, United States, 1984. *See* para. 43c(3)(c). The underlying rationale for rejecting the intoxication defense is consistent with that given by other Federal courts.[6] And importantly, Judge Sullivan noted in *Tilley* that

> the primary rationale [for these decisions may have] been eroded. On the other hand, [*Vaughn*] cites *Ferguson* without expressly repudiating its holding. Moreover, a related rationale expressed in *United States v. Roman* and *United States v. Ferguson,* that the intent to drink may suffice for malice aforethought or other intent necessary for unpremeditated murder has not yet been rejected.

25 MJ at 22 (citations omitted).

Thus, although recent decisions have rejected the notion that unpremeditated murder is a general-intent rather than a specific-intent crime, the underlying policy remains for rejecting the voluntary-intoxication defense. One who voluntarily intoxicates himself or herself cannot be heard to complain that they were incapable, by virtue of that intoxication, of committing intentionally the acts leading to the death of another human being. While the law may mitigate and recognize that one in a voluntarily induced intoxicated state may not have the capacity to carefully premeditate and willfully and deliberately carry out a murder, thus reducing premeditated murder to a lesser offense, it does not mitigate or forgive one whose conduct reflects an intent to kill or inflict great bodily harm. Often, it is the very ingestion of alcohol or other intoxicating substances that induces the malicious and wrongful conduct. It would be paradoxical to allow a person to voluntarily intoxicate himself or herself, and then forgive them for the consequences of their conduct while under the influence of the same intoxicant. The military judge did not err in failing to instruct that voluntary intoxication was a defense to unpremeditated murder.

The decision of the United States Army Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE concur.

---

tary intoxication to reduce such a heinous offense as murder to a misdemeanor. *Id.* at 659, 10 CMR at 157.

Since our *Craig* decision in 1953, Congress has had numerous occasions to amend or modify the Uniform Code. Pub.L. No. 90–632, 82 Stat. 1335 (Oct. 24, 1968); Pub.L. No. 98–209, 97 Stat. 1393 (Dec. 6, 1983); and Pub.L. No. 101–189, 103 Stat. 1569 (Nov. 29, 1989). Yet our 1953 construction of Article 118, as it relates to the partial defense of voluntary intoxication, has remained undisturbed. We are aware of nothing that enables us to divine legislative intent more accurately 40 years removed. If we have been wrong all these years in believing that Congress did not want murders reduced to misdemeanors through the voluntary consumption of alcoholic beverages or drugs, we think Congress should be the one to set us straight. For this Court now, unilaterally, to substitute a new policy based upon a claim of enlightenment would be the height of infringement on legislative judgment, not deference to it.

6. *See United States v. Lopez,* 575 F.2d 681, 684 (9th Cir.1978) ("Lopez was charged with second degree murder and convicted of voluntary manslaughter, both of which require only general intent. '[T]he so-called "exculpatory" rule, under which drunkenness may be taken into account to show that a particular state of mind ... was not present' applies only to first degree murder, a specific intent crime."); *United States v. Jewett,* 438 F.2d 495, 499 (8th Cir.), *cert. denied,* 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 117 (1971); *Kane v. United States,* 399 F.2d 730, 736 (9th Cir.1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969) ["The included crimes of murder in the second degree (18 USC § 1111) and voluntary manslaughter (18 USC § 1112), do not require a specific intent (willful, deliberate, malicious and premeditated), as distinguished from a general intent to kill, and therefore, as to them, the exculpatory rule [allowing intoxication to vitiate specific intent] is inapplicable. *See Bishop v. United States,* 71 App.D.C. 132, 107 F.2d 297, 302–303."]; *Nestlerode v. United States,* 122 F.2d 56 59–60 (D.C.Cir.1941) ("[V]oluntary intoxication will reduce the degree of the offense from murder in the first to murder in the second degree, but we said that the defendant's voluntary intoxication would not of itself negative the malice required to constitute second degree murder and thereby reduce second degree murder to voluntary manslaughter. This is the correct and generally accepted rule.").

WISS, Judge (concurring in part, dissenting in part, and concurring in the result):

## I

I concur in Part I of the majority opinion. I confess some concern over the failure of defense counsel to use, as mitigation during the sentencing proceedings, available expert evidence that appellant's "blood alcohol content was between 2.4 and 2.6 mils" at the time of the offenses and "that [for] anyone with such a high concentration of alcohol in his body, ... the brain would be so impaired that organically it would be impossible for an individual to form that type of intent." Defense counsel, however, has offered an explanation to this Court for his claimed tactical eschewal of such evidence that is not unreasonable. 37 MJ at 409–10.

Given the substantial deference that we afford such decisions, I agree that counsel's performance in declining to use the subject evidence during the sentencing proceedings did not fall below prevailing professional norms. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 MJ 186 (CMA 1987). Moreover, although I now would recognize that voluntary intoxication may be found to negate the specific intent required to convict of unpremeditated murder, *infra,* that clearly was not the law at the time of appellant's trial (nor now, either, in light of the majority opinion). Accordingly, defense counsel's failure to use such evidence during the trial on the merits did not render his performance deficient in that regard, either. *See Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct 838, 122 L.Ed.2d 180 (1993).

## II

I must dissent, however, from Part II of the majority opinion. The majority candidly acknowledges that unpremeditated murder under Article 118(2), Uniform Code of Military Justice, 10 USC § 918(2), requires proving beyond reasonable doubt that appellant had the *specific intent* to kill or inflict grievous bodily harm. *United States v. Vaughn,* 23 USCMA 343, 49 CMR 747 (1975). The opinion also implicitly acknowledges that, as to every single *specific-intent* crime chargeable under the Uniform Code of Military Justice *except unpremeditated murder,* the medically and legally enlightened state of the law is that intoxication—even voluntary intoxication—may render a person physically incapable of forming specific intent.

Nonetheless, the majority declines "to overrule the long-standing decisions of this Court which have consistently held that *voluntary* intoxication will not in military law negate that criminal intent necessary for the commission of unpremeditated murder." 37 MJ at 412. The apparent reason for this declination is the majority's conclusion that "the underlying policy remains [as it has in the past] for rejecting the voluntary-intoxication defense"—that policy being: "One who voluntarily intoxicates himself or herself cannot be heard to complain that they were incapable, by virtue of that intoxication, of committing intentionally the acts leading to the death of another human being." *Id.* at 413.

## A

My quarrel with the majority is quite simple. This Court has recognized the medical reality that intoxication—regardless of how it occurs—has the capacity to render the person physically incapable of forming the intent that Congress has dictated must have been formed in order for certain crimes to be proved.[1] One of those crimes is unpremeditated murder.[2]

---

1. *Compare Ellis v. Jacob,* 26 MJ 90 (CMA 1988) (evidence of extreme sleep deprivation and other pressures held sufficient to trigger instruction that partial mental responsibility may negate specific intent required to prove unpremeditated murder).

2. I am constrained to point out that the "other Federal courts" cited by the majority as holding consistent with the majority's opinion here involve a degree of murder that required only a *general intent. See* 37 MJ at 413 n. 6. Those cases are useless, then, as moral support for the

Given this recognition and given Congress' prescription of the required intent for this crime, I do not believe that this Court has the authority to determine, as a matter of "policy," that an intoxicated accused "cannot be heard to complain that [he was] incapable, by virtue of that intoxication," of forming the necessary intent. If the end result of this crime—death—is so uniquely abhorrent that the medical limitations flowing from intoxication should be ignored as a matter of social policy, that is a matter for Congress—not this Court—to determine. *See generally United States v. Joseph,* 37 MJ 392, 401 (CMA 1993) (Wiss, J., concurring in the result) (legislative judgment is for Congress, not this Court).

### B

Beyond this reaction to the apparent decisional basis of the majority opinion, however, I believe that some comment should be made concerning what may be at least an equally motivating consideration for the majority: Its claim that its holding today has been the law of this Court "for over 40 years," citing *United States v. Ferguson,* 17 USCMA 441, 38 CMR 239 (1968); *United States v. Craig,* 2 USCMA 650, 10 CMR 148 (1953); and *United States v. Roman,* 1 USCMA 244, 2 CMR 150 (1952). 37 MJ at 412.

*United States v. Tilley,* 25 MJ 20 (CMA 1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988), was a case strikingly similar to this one, except that the military judge there gave an instruction which the Court concluded permitted the factfinders to decide whether the accused's voluntary intoxication could negate the specific intent necessary for unpremeditated murder. 25 MJ at 21. In the course of

responding to the Government's argument that "voluntary intoxication is legally irrelevant in all cases of unpremeditated murder," then-Judge Sullivan wrote for a unanimous Court:

> We note that the *Vaughn* decision clearly holds that the intent to kill or commit great bodily harm required by Article 118(2) is a specific intent and, accordingly, the primary rationale of *Ferguson, Craig,* and *Roman* has been eroded.[3] On the other hand, that decision cites *Ferguson* without expressly repudiating its holding. *United States v. Vaughn,* 23 USCMA at 345, 49 CMR at 749. Moreover, a related rationale expressed in *United States v. Roman,* 1 USCMA at 251, 2 CMR at 157, and *United States v. Ferguson,* 17 USCMA at 443, 38 CMR at 241, that the intent to drink may suffice for malice aforethought or other intent necessary for unpremeditated murder has not yet been rejected. *See United States v. Hernandez,* 20 USCMA 219, 223, 43 CMR 59, 63 (1970). The prudent action of the judge in giving his instructions in the present case makes it unnecessary to resolve this question today.

25 MJ at 22.

Two points must be made concerning this language in *Tilley:* First, it quite clearly demonstrates that 6 years ago this Court recognized that the decision in *Vaughn*—which held that the intent involved in unpremeditated murder was a specific intent—"eroded" what was "the primary rationale of *Ferguson, Craig,* and *Roman.*" Nothing has changed since *Tilley*—the rationale of those cases still is eroded by *Vaughn.*

Second, though the language in *Tilley* mentions the possibility "that the intent to

---

majority's decision here that voluntary intoxication may not negate *specific intent* to kill. The same distinction must be kept in mind when considering the majority's discourse on federal civilian homicide statutes in the first half of its footnote 5.

**3.** Despite the unequivocal observation of the unanimous Court in *Tilley* that the rationale of

these cases *"has been* eroded" by *Vaughn,* 25 MJ 20, 22 (CMA 1987) (emphasis added), the majority's quotation of this language from *Tilley* changes that verb substantially to "[*may have*] *been* eroded." 37 MJ at 413 (brackets in original; emphasis added). I believe that the sentence as written in *Tilley,* rather than as creatively modified in the majority's quotation of it, more accurately reflects reality.

drink may suffice for malice aforethought or other intent necessary for unpremeditated murder," the better argument is to the contrary. As for malice aforethought, I believe that the following analysis is persuasive:

Although malice aforethought requires a predetermination to do an illegal act, it does not necessarily require a predetermination of intent to kill or inflict grievous bodily harm. Thus, the accused in *Roman* would presumably be guilty of second degree murder under one of these civilian statutes [that permitted conviction for second degree murder upon a showing only of malice aforethought] if he intentionally robbed the town hall or resisted apprehension there and the resulting homicide was a consequence of his perpetration of a felony or his reckless indifference. Under these same facts, however, he should presumably be not guilty of unpremeditated murder under article 118(2), as the killing would not have been preceded by the accused's intent to kill or grievously injure as required in the *Manual*. The court in *Roman* did not address this fine but potentially crucial distinction, which has not been discussed by the military's appellate courts to the present day.

Milhizer, *Voluntary Intoxication as a Criminal Defense under Military Law* (hereafter Milhizer), 127 Mil.L.Rev. 131, 164 (1990) (footnotes omitted). As for what "other intent" is in issue under Article 118(2) that might be satisfied by "the intent to drink," I am unaware of any. The intent involved in unpremeditated murder is quite clear in the statute: "inten[t] to kill or inflict great bodily harm." Art. 118(2).

Thus, it appears to me that, whatever rationale there was to our precedent of 40 years, this Court recognized 6 years ago that much of it "has been eroded." I would recognize today that the rest is not persuasive. Accordingly, in the absence of a compelling *rationale* for the majority's legal position, the majority's holding is old law, but it is not good law—and, in light of *Tilley*, it is not entirely even current law

(until today). "The practice of allowing voluntary intoxication to act as a partial defense to premeditated murder, but as no defense to unpremeditated murder, seems analytically untenable." Milhizer, *supra* at 162.

## III

Given the state of the law, the military judge understandably did not, *sua sponte*, instruct on voluntary intoxication's affecting the specific intent involved in unpremeditated murder, and Morgan did not begin his campaign to change the state of the law by making a motion for such an instruction. Instead, he raised the matter for the first time on appeal. In light of the majority's holding that rebuffs my views, it is not material to this appeal to decide whether, had appellant succeeded, he should benefit from those efforts even though he did not initiate them at trial. Instead, having noted my dissenting views on the issue before us, I acquiesce in the disposition ordered.

SULLIVAN, Chief Judge (concurring in the result):

Appellant did not request an instruction that a finding of voluntary intoxication on his part would reduce his crime from unpremeditated murder to voluntary manslaughter. Moreover, he did not object to the failure of the military judge to *sua sponte* give this instruction to the members. Thus, the appropriate framework for resolving this case is the doctrine of plain error. *See generally Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). *See* RCM 920(f), Manual for Courts–Martial, United States, 1984.

Assuming error in the judge's failure to *sua sponte* give the above instruction, appellant must persuade us that it was plain or obvious error. *United States v. Fisher*, 21 MJ 327 (CMA 1986); *see United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Here, the Discussion to RCM 916(*l*)(2) suggests that such an instruction is not authorized for purposes

of reducing unpremeditated murder to voluntary manslaughter. However, the decision of this Court in *United States v. Tilley*, 25 MJ 20 (CMA 1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988), raises serious questions about the correctness of this advice. The exchange today between the majority opinion and the separate opinion of Judge Wiss further establishes that this legal question was not clear under current law at the time of appellant's trial. Under *United States v. Olano,* —— U.S. at ——, 113 S.Ct. at 1777, this is not plain error.

Assuming error and that it was plain, appellant must also persuade us that such error "affect[ed]" his "substantial rights." —— U.S. at ——, 113 S.Ct. at 1778. Here, appellant proffered no particular evidence that his voluntary intoxication disabled him from forming an intent to kill or cause grievous bodily harm. In fact, he withdrew a defense request for expert witnesses on this matter when the charges were amended from premeditated murder to unpremeditated murder. Finally, before this Court he has not made such an offer of proof. In my view, evidence of intoxication, even coupled with evidence of a personality disorder, does not meet this standard or establish the prejudice of the sort covered by the plain-error rule. *Cf. United States v. Tilley, supra.*