Joseph R. ELLIS, Jr., Staff Sergeant, U.S. Army, Appellant,

v.

Gustave F. JACOB, Colonel, U.S. Army, Appellee.

Misc. Dkt. No. 88–05.

U.S. Court of Military Appeals.

April 21, 1988.

For the Accused: *Captain Stephanie C. Spahn* (argued); *Richard L. Powell, Esq.* and *Captain Henry R. Richmond* (on brief); *Colonel John T. Edwards* and *Major Eric T. Franzen.*

For Colonel Jacob: *Colonel Norman G. Cooper* (argued); *Lieutenant Colonel Gary F. Roberson, Major Kathryn F. Forrester, Captain Eva M. Novak* (on brief).

*Opinion of the Court*

COX, Judge:

This case is before us on appeal of a pretrial ruling by the military judge. The accused is charged with the unpremeditated murder of his 11–year-old son, in violation of Article 118(2), Uniform Code of Military Justice, 10 U.S.C. § 918(2). During the initial session of the general court-martial—the point at which this proceeding stands halted pending this review—the defense made several motions, including one to suppress the accused's pretrial statement on the ground that it was involun-

tary. That matter is not of direct concern to this appeal.

What is germane is that, after making the voluntariness motion, he moved *in limine* for a ruling to permit him to introduce expert-opinion evidence about his state of mind at the time of the offense. The evidence was proffered as rebuttal to the intent element that the Government is required to prove in its case-in-chief. The accused's contention is that he did not specifically intend to kill his son.

In support of the motion, the accused proffered the testimony of the psychiatrist who had already testified on the voluntariness motion. That testimony was to the effect that he was incapable at the time of the offense of forming specific intent due to extreme sleep deprivation and other pressures bearing on him. The accused attempted to corroborate this information with his own testimony and that of a fellow servicemember, describing the accused's physical, emotional, and mental condition at the time. He does not contend that he was suffering from some mental disease or defect, and he specifically does not tender any form of insanity defense. Indeed, his expert agrees that, given a few days' sleep, the accused was a perfectly normal, healthy person.

The Government produced several lay witnesses who disputed the claims that the accused was exhausted and incapacitated. Moreover, the pretrial admission suggests a different cause for his lethal outburst.[1]

 The military judge denied the defense motion to adduce expert testimony in rebuttal to the specific-intent element. The judge based his ruling on Article 50a, UCMJ, 10 U.S.C. § 850a, and R.C.M. 916(k)(2), Manual for Courts-Martial, United States, 1984. *See infra.* The Court of Military Review denied complainant's petition for extraordinary relief on October 27, 1987, without prejudice to his right to reassert the matter during appellate review. Appellant filed a petition for extraordinary relief in the nature of a writ of mandamus on November 5, 1987. We issued an order to show cause,[2] ordered briefs, and received oral argument. We now hold that the military judge erred when he excluded part of the expert's testimony.

**I**

Prior to November 14, 1986, the Uniform Code of Military Justice contained no specific provision regarding mental responsibility. Offenses, of course, generally contain at least one *mens rea* element. Thus, unpremeditated murder is defined in Article 118(2) as follows:

> Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he ... *intends to kill or inflict great bodily harm* ... is guilty of murder, and shall suffer such punishment as a court-martial may direct ...

(Emphasis added.)

From this statutory basis, the Manual for Courts-Martial identifies the following elements of unpremeditated murder:

> (a) That a certain named or described person is dead:
>
> (b) That the death resulted from the act or omission of the accused;

---

1. In the statement, the accused was asked to explain the circumstances surrounding the events leading up to his son's death. His response to the question commenced thusly:
 At about 1900–1930, 27 May 87, my wife was washing clothes at our house ... She found a note in some of the clothes which said something to the effect "She has left you two times already, what do you think about that"? My wife thought that the note had been written to me but it wasn't. I went to my son and got into an argument about it because my wife and I had an argument about it. As a result I went to hit my son ...

2. We now treat the petition for extraordinary relief as a writ-appeal petition under Rule 18(a)(4) of this Court's Rules of Practice and Procedure. Whenever a Court of Military Review has considered an issue in a petition for extraordinary relief before sentence is announced, that same issue usually should only be presented to this Court in a writ-appeal petition, not in an original petition for extraordinary relief. The parties are redesignated as appellee (Jacob) and appellant (the accused).

(c) That the killing was unlawful; and

(d) That, at the time of the killing, the accused had the accused had the *intent to kill or inflict great bodily harm* upon a person.

Para. 43*b* (2), Part IV, Manual, *supra* (emphasis added).

Regarding mental-responsibility defenses, the version of R.C.M. 916(k) which was in effect *before* November 14, 1986, reflected a two-tier approach. R.C.M. 916(k)(1) stated the then-prevailing "substantial capacity" formula[3] as a complete defense. R.C.M. 916(k)(2) articulated the incomplete defense of *"Partial mental responsibility,"* described as follows:

A mental condition not amounting to a general lack of mental responsibility under subsection (k)(1) of this rule but which produces a lack of mental ability at the time of the offense to possess actual knowledge or to entertain a specific intent or a premeditated design to kill is a defense to an offense having one of these states of mind as an element.

Passage of the National Defense Authorization Act for Fiscal Year 1987, Pub. L.No. 99–661, § 802(a)(1), 100 Stat. 3905, effective November 14, 1986, changed the definition of lack of mental responsibility. Article 50a(a), UCMJ, 10 U.S.C. § 850a(a), now provides:

It is an affirmative defense in a trial by court-martial that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts. *Mental disease or defect does not otherwise constitute a defense.*

(Emphasis added.)

The version of the 1984 Manual in effect at the time of appellant's trial incorporates

this definition of the mental-responsibility defense. R.C.M. 916(k)(1)(Change 3). Further, regarding partial mental-responsibility, that change to the Manual states:

A mental condition not amounting to a lack of mental responsibility under subsection (k)(1) of this rule is not a defense, *nor is evidence of such a mental condition admissible as to whether the accused entertained a state of mind necessary to be proven as an element of the offense.*

R.C.M. 916(k)(2) (emphasis added).

Before the change to the Manual, it did not matter whether evidence attacking the mental element of an offense was thought of as an affirmative defense or merely as a challenge to the sufficiency of the Government's proof. In either case, the evidence was fully admissible and had the same practical effect. Now apparently it matters, for if such evidence is an affirmative defense, this Manual purports to do away with it and to bar the receipt of any evidence attacking that element. In other words, the Government gets to prove intent or other *mens rea* by whatever means, usually inference, and the accused can do nothing to disprove it unless he can establish the complete defense of lack of mental responsibility. R.C.M. 916(k)(3)(A).

█ Such a construction raises obvious constitutional concerns. *See, e.g., Rock v. Arkansas,* — U.S. —, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Moreover, the President's rule-making authority does not extend to matters of substantive military criminal law. Arts. 36 and 56, UCMJ,

---

**3.** R.C.M. 916(k)(1) provided:

It is a defense to any offense that the accused was not mentally responsible for it. A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacks substantial capacity to appreciate the criminality of that

person's conduct or to conform that person's conduct to the requirements of law. As used in this rule, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial behavior.

10 U.S.C. §§ 836 and 856, respectively. Thus, even ignoring constitutional questions, such a Manual provision could only be effective if it reflected a legislative act. Therefore, we look first to the language of Article 50a(a) itself.

■ Immediately we are struck with this statement in Article 50a(a): "Mental disease or defect does not otherwise constitute *a defense.*" (Emphasis added.) If we construe this in the ordinary sense of affirmative defenses, then the statute has nothing whatever to do with limiting attacks on the elements of offenses, and the Manual's attempt to accomplish this is a nullity. Thus from appellee's standpoint, the *best* that can be claimed about Article 50a(a) is that it is ambiguous. That, at least, gets us to legislative history. There again, however, the Government's thesis fails.

The Senate report accompanying the Defense Authorization Act makes it clear that the modification to the Uniform Code was simply intended to conform military law to the "standards relating to insanity under the Federal Criminal Code."[4] The federal standard, set forth in 18 U.S.C. § 17,[5] provides:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

Obviously Article 50a(a) is identical in all significant respects. The question then becomes—how has the federal statute been construed by the Federal courts since its enactment?[6] The three decisions that have squarely addressed this issue are very clear in distinguishing attacks on *mens rea* from diminished-capacity defenses. *United States v. Pohlot,* 827 F.2d 889 (3d Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988); *United States v. Gold,* 661 F.Supp. 1127 (D.D.C.1987); *United States v. Frisbee,* 623 F.Supp. 1217 (N.D.Cal.1985). *Cf. Bowen v. Kemp,* 832 F.2d 546 (11th Cir.1987) (*en banc*), *cert. denied,* —— U.S. ——, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988). Moreover, the legislative history of 18 U.S.C. § 17 set out in these decisions, especially *United States v. Pohlot, supra,* effectively demolishes the contention that Congress had a notion to preclude defendants from attacking *mens rea* with evidence to the contrary.

Thus Article 50a(a), like its model, does not bar appellant from presenting evidence in support of his claim that he lacked specific intent to kill at the time of his offense. Derivatively, R.C.M. 916(k)(2) is also ineffective in achieving this result.

## II

That does not quite end the matter, however. The psychiatric testimony in this case proceeds essentially along two lines. First, the witness explained that a person experiencing the extent of sleep depriva-

---

**4.** S.Rep. No. 331, 99th Cong., 2d Sess. 249 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 6413, 6444. *See also* H.R.Conf.Rep. No. 1001, 99th Cong., 2d Sess. 492 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 6529, 6551.

**5.** Originally codified at 18 U.S.C. § 20, the provision was redesignated as 18 U.S.C. § 17 by Pub. L.No. 99–646, § 34(a), Nov. 10, 1986, 100 Stat. 3599.

**6.** Admittedly, numerous federal and state courts, generally construing so-called "all-or-nothing" state laws, have concluded that accuseds can be barred from introducing evidence attacking *mens rea* elements, except in the course of formal insanity defenses. *See Muench v. Israel,* 715 F.2d 1124 (7th Cir.1983), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984); *Wahrlich v. Arizona,* 479 F.2d 1137 (9th Cir.), *cert. denied,* 414 U.S. 1011, 94 S.Ct. 375, 38 L.Ed.2d 249 (1973); Annotation, *Admissibility of Expert Testimony as to Whether Accused Had Specific Intent Necessary for Conviction,* 16 A.L.R.4th 666, § 4 (1982). Apart from our doubts about the constitutionality of such holdings, *see also Morgan v. Israel,* 735 F.2d 1033, 1035 (7th Cir.1984), *cert. denied,* 469 U.S. 1162, 105 S.Ct. 917, 83 L.Ed.2d 929 (1985), we confine ourselves to construction of our own statute.

tion and pressure *described by appellant* might well suffer serious psychological impairment. Second, the defense has *proffered* that the witness will testify that the accused "did not and could not have formulated an intent to kill nor did he or could he formulate the intent to inflict grievous bodily harm."

Our holding today goes only so far as to state that the first line of testimony is admissible. We have no doubt whatever that a psychiatrist is within his realm of expertise in describing the effects of sleep deprivation, *et al.*, on the human mind.

The basis for the *proffered* line of testimony is less clear —perhaps owing to the minimal level of development of the record on the point as yet. As we read the record to date, the witness' testimony depends heavily on the accused's account of his lack of sleep. Unlike the expert who diagnoses forms and degrees of mental illness, we are admittedly unfamiliar with the science of knowing how much sleep a healthy person had at a given point and, thus, what his mental acuity may have been at that time. Certainly, we do not preclude the defense from establishing such a foundation. *See United States v. Gipson*, 24 M.J. 246 (C.M.A.1987). However, as the record is not well-developed on the issue and as the military judge has not yet ruled on it, we defer judgment on this point.

The writ-appeal petition is granted; the decision of the United States Army Court of Military Review denying the petition is reversed as to the evidence of the effects of sleep deprivation and pressure described by the accused on the human mind; and the ruling of the military judge excluding that defense-proffered evidence is set aside. The record of trial is returned to the Judge Advocate General of the Army for resubmission to the court-martial below for further proceedings.

Chief Judge EVERETT and Judge SULLIVAN concur.