# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 5, 2017          Decided August 8, 2017

No. 16-5150

TEXAS NEIGHBORHOOD SERVICES,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES AND THOMAS E. PRICE, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF HHS,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01545)

*Alexandra R. Rosenblatt* argued the cause for appellant. With her on the briefs were *Edward T. Waters* and *Christopher J. Frisina*.

*Joshua M. Kolsky*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief was *R. Craig Lawrence*.

Before: TATEL, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:  Year-end performance bonuses can be a useful tool for motivating employees, so long as the employees know in advance that the quality of their work will be reflected in their paychecks.  The federal government accordingly allows federal grantees to award performance bonuses that are reasonable, announced in advance, and adequately documented.  Between 2010 and 2012, plaintiff Texas Neighborhood Services received Head Start grant money to provide childcare services to low-income families in Texas.  During that time, Neighborhood Services used $1.3 million in federal funds to award performance bonuses to its staff.  In 2013, the Department of Health and Human Services (HHS), which administers Head Start grants, required Neighborhood Services to repay the bonus money to the government, explaining that the bonuses were unreasonable and inadequately documented.  After the repayment decision was sustained by HHS's Departmental Appeals Board (Appeals Board or Board), Neighborhood Services filed suit, arguing that the Appeals Board's ruling was arbitrary and capricious in violation of the Administrative Procedure Act (APA).  Finding no prejudicial error in the Board's decision, the district court rejected the APA challenge.  We affirm.

I.

HHS's Administration for Children and Families (the Administration) provides grants to Head Start organizations across the country to support their provision of "health, education, parental involvement, nutritional, social, and other services" to low-income, preschool-aged children.  42 U.S.C. § 9833; *see* 45 C.F.R. §§ 1301.1 *et seq*.  The Office of Management and Budget's Circular A-122 (OMB Circular or Circular) explains when and how the government will reimburse federal grantees, including organizations receiving Head Start money, for different types of expenses.  *See* 2 C.F.R.

Pt. 230 (2007).[1]  For our purposes, the key provisions in the Circular are those governing employee salaries and performance bonuses.

The OMB Circular's salary and bonus provisions authorize federal grantees to use performance bonuses to motivate their staffs, so long as: (1) the "overall compensation" paid to employees—including performance bonuses—is "reasonable," 2 C.F.R. Pt. 230, App. B ¶ 8.j; (2) the bonuses are paid "pursuant to an agreement entered into in good faith between the organization and the employees before the services were rendered, or pursuant to an established plan followed by the organization so consistently as to imply, in effect, an agreement to make such payment," *id.*; and (3) the incentive payments are "adequately documented," *id.*, App. A ¶ A.2.g. If a grantee does not follow those rules in awarding performance bonuses, HHS may disallow—*i.e.*, refuse to cover the cost of—the bonuses.  *See id.*, App. A ¶ A.2, App. B ¶ 8.j.

In 2007, Neighborhood Services decided to develop a way to use performance bonuses to motivate its employees.  The Neighborhood Services Board of Directors adopted an Incentive Compensation Policy (the 2007 Policy), which contemplated that senior Neighborhood Services staff would develop a "plan" for rewarding "consistent or exemplary job performance."  J.A. 100.  Two years later, senior staff announced the 2009 Plan:  Neighborhood Services staff would implement a series of "cost reductions," with a goal of operating at 95% of its annual budget and, if those cost reduction strategies were effective, Neighborhood Services would use the savings to implement an "incentive" system. J.A. 103.  Under that system, Neighborhood Services would

---

[1] At all relevant times, the Circular was codified at 2 C.F.R. Pt. 230. We will therefore cite Pt. 230 throughout this opinion, even though the Circular is now codified at 45 C.F.R. §§ 75.400 *et seq.*

use a "matrix" to assess employee performance, rewarding "superior"-rated employees with more generous bonuses than employees with "average or below average" performance records. J.A. 103.

In February 2013, the Administration conducted a "monitoring review" of Neighborhood Services's use of federal funds in Fiscal Years 2010 through 2012 (FY 2010-2012). J.A. 86, 90-91. That review resulted in a Monitoring Report. Among the Report's negative findings was an allegation that Neighborhood Services had issued performance bonuses without taking adequate steps to ensure that "overall compensation" for its employees was reasonable and without "document[ing] the basis for amounts awarded as incentive compensation," as required by the OMB Circular. J.A. 90

On September 19, 2013, the Administration sent Neighborhood Services a letter stating that, in light of the Monitoring Report's conclusion that Neighborhood Services had paid performance bonuses in violation of the OMB Circular, the Administration would disallow the $1,332,698.09 in federal funds that Neighborhood Services had used to issue the bonus checks (the Disallowance Letter). *See* J.A. 82-83. The Disallowance Letter instructed Neighborhood Services to repay that amount to the government.

Neighborhood Services appealed the Disallowance Letter to the Appeals Board, which rejected the challenge. The Board explained that Neighborhood Services failed to carry its burden of demonstrating that the performance bonuses were reasonable. The Board emphasized that Neighborhood Services had not established that it was reasonable to pay a relatively large percentage of employees' overall compensation as performance bonuses. Further, based on Neighborhood Services's own documentation, the Board found

that it had not consistently given higher bonuses to employees who performed better than their peers. The lack of correlation between employees' performance and the size of their bonuses suggested that the monetary awards were "based on factors such as favoritism, rather than performance." *Id.* at 311. Regardless of whether such favoritism was barred by Neighborhood Services's own policies, the Board concluded, the suggestion that favoritism motivated bonus decisions might have turned the awards into a "disincentive rather than an incentive to achieve superior performance," so the awards could not be considered reasonable under the OMB Circular. *Id.*

The Appeals Board also concluded that Neighborhood Services's documents established that the organization "either did not follow its incentive compensation policies when making [performance] awards or failed to provide adequate documentation to support the awards." J.A. 305. According to its documents, Neighborhood Services had codified its incentive compensation system in the 2007 Policy and 2009 Plan. Nevertheless, the record contained evidence that Neighborhood Services routinely disregarded that system. For example, Neighborhood Services's 2009 Plan stated that the organization should use its performance matrix to determine how large employees' bonuses should be. Yet employees' matrix scores did not correlate with the size of their bonuses. Similarly, while the 2009 Plan stated that performance bonuses for "superior work performance" should be "higher than for average or below average perform[ance]," J.A. 103, the record showed that, in FY 2010, Neighborhood Services gave each permanent, non-managerial employee a bonus "equal to 160 hours of his or her unit pay," regardless of how he or she performed, J.A. 305. In light of that evidence, the Appeals Board concluded that Neighborhood Services had either ignored its incentive compensation policy or had failed to

introduce enough documentary evidence to show that—despite appearances—Neighborhood Services was in fact following that policy.

After the Appeals Board issued its initial decision, Neighborhood Services sought reconsideration, arguing that the Board had used the incorrect legal standards to determine whether Neighborhood Services had complied with the incentive compensation provisions in the OMB Circular. The Board denied Neighborhood Services's motion. Neighborhood Services then sued HHS in district court, arguing that the Board's decision was arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2)(a). *See Tex. Neighborhood Servs. v. U. S. Dep't of Health & Human Servs.*, 172 F. Supp. 3d 236 (D.D.C. 2016). Embracing the Board's analysis, the district court granted HHS's motion for summary judgment, and this appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*. *See Se. Ala. Med. Ctr. v. Sebelius*, 572 F.3d 912, 916 (D.C. Cir. 2009). Like the district court, we defer to the agency, asking only whether the Appeals Board's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). The scope of review under the arbitrary and capricious standard is "narrow" and we cannot "substitute [our] judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). We must ensure that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks omitted). Agency action is arbitrary and capricious "if the agency has relied on factors

which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

Neighborhood Services contends that the Appeals Board's decision was arbitrary and capricious for four reasons: (1) the Board overlooked the OMB Circular's provision that compensation is reasonable if it is comparable to that for similar work in the same labor market; (2) the Board disallowed the performance bonuses based on the theory that the bonuses were inconsistent with Neighborhood Services's internal policies when, Neighborhood Services contended, HHS had not asserted that theory in its briefing; (3) the Board found that the performance bonuses were inadequately documented, even after Neighborhood Services provided all of the documentation required by Board precedent and by the Disallowance Letter; and (4) the Board held that Neighborhood Services's bonuses collectively violated the Circular, rather than considering whether each individual bonus was consistent with the Circular's requirements. We agree that the Board failed adequately to grapple with the Circular's definition of reasonable compensation when it assessed the reasonableness of Neighborhood Services's bonuses, but we conclude that error was harmless. Because we see no other arbitrariness in the Board's decision, we affirm the district court's judgment.

A.

As noted above, the OMB Circular provides that a grantee can only award performance bonuses to its employees if the employees' "overall compensation" is "reasonable." 2 C.F.R. Pt. 230, App. B ¶ 8.j. A grantee bears the burden of showing

that compensation satisfies that reasonableness standard. *See, e.g.*, *Tex. Migrant Council, Inc.*, DAB No. 1743, 2000 WL 1310757, at \*2-3 (Dep't of Health & Human Servs. Sept. 7, 2000).

To determine whether compensation for Neighborhood Services employees was reasonable, the Appeals Board looked to Appendix A of the Circular, which provides that "[a] cost is reasonable if, in its nature or amount, it does not exceed that which would be incurred by a prudent person under the circumstances." 2 C.F.R. Pt. 230, App. A ¶ A.3. The Board then considered Neighborhood Services's only evidence that it had compensated its employees in a prudent manner: A "wage comparability study" showing that Neighborhood Services's overall wage payments to employees were less than or roughly equal to wages paid by similar organizations in the same geographic area. J.A. 310. The Board found that the study was not dispositive because it did not address whether it was reasonable for a daycare center to pay employees relatively low base salaries combined with relatively large bonuses (as Neighborhood Services did). The Board therefore concluded that Neighborhood Services had not carried its burden of demonstrating that its total employee compensation was reasonable.

Neighborhood Services contends that the Appeals Board arbitrarily applied the Circular's general standard for reasonable *costs* in Appendix A, rather than the specific standard for reasonable *compensation* set out in Appendix B. As just noted, the general cost standard asks what a prudent person would pay under the circumstances, 2 C.F.R. Pt. 230, App. A ¶ A.3, whereas under the compensation-specific standard, compensation is "reasonable to the extent that it is comparable to that paid for similar work in the [same] labor market[]." *Id.*, App. B ¶ 8.c.2. Applying the principle that

specific rules typically displace general rules on the same subject, *see, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *Nevada v. Dep't of Energy*, 400 F.3d 9, 16 (D.C. Cir. 2005), Neighborhood Services argues the Board should have confined its reasonableness analysis to the question whether, when the incentive compensation and base pay were considered together, Neighborhood Services paid its employees an amount that was "comparable to that paid for similar work in the [same] labor market[]." 2 C.F.R. Pt. 230, App. B ¶ 8.c.2. From Neighborhood Services's perspective, its wage comparability study was dispositive of that question, because it conclusively showed Neighborhood Services employees earned the same or less overall compensation than individuals performing "similar work" at other daycare centers in the area.

We need not decide whether the Appeals Board should have given the definition of reasonable compensation precedence over the general definition of reasonable costs or whether there is any difference between the two that might be material here. For our purposes, it is enough to note that the Board did not grapple with both standards; rather, it looked principally at the reasonableness of bonus payments as a percentage of total compensation, and failed to consider whether overall compensation was nonetheless reasonable because it was comparable to that paid for similar work in the relevant market. By disregarding a definition that was "still on the books," the Board acted arbitrarily. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Nevertheless, we conclude that the Board's error was harmless. *See* 5 U.S.C. § 706 (instructing courts reviewing agency action to apply "the rule of prejudicial error"). As we will explain below, the Board reasonably concluded that Neighborhood Services either failed to follow its stated

incentive compensation policies or, at least, failed to provide adequate documentation to prove that it had followed its policies. And that conclusion amply supported the decision to disallow Neighborhood Services's bonus payments. *See Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 939 (D.C. Cir. 2011) ("[W]hen an agency relies on multiple grounds for its decision, some of which are invalid, we may nonetheless sustain the decision as long as one is valid and the agency clearly would have acted on that ground even if the other[s] were unavailable." (internal quotation marks omitted)).

B.

According to Neighborhood Services, the Appeals Board also acted arbitrarily by considering whether Neighborhood Services consistently followed its agreement or plan to pay performance bonuses without soliciting briefing from the parties on that issue. Neighborhood Services claims that the Board's decision of that issue betrayed its partiality toward the Administration. At the same time, Neighborhood Services insists, the Board denied Neighborhood Services the "opportunity to rebut" the argument that it was not consistently following its own policies. Appellant Br. 19.

But the issue was briefed. The Appeals Board appropriately resolved the parties' long-running dispute over whether Neighborhood Services adequately showed it was in practice following its written bonus policies. As noted above, a grantee like Neighborhood Services can only award performance bonuses to its employees if the bonuses are "adequately documented." 2 C.F.R. Pt. 230, App. A ¶ A.2.g. Bonuses cannot be considered "adequately documented" unless a grantee maintains sufficient documents to prove that the bonuses are "allowable," *i.e.*, consistent with applicable regulations. *Touch of Love Ministries, Inc.*, DAB No. 2393,

2011 WL 3251319, at *3 (Dep't of Health & Human Servs. June 29, 2011). Neighborhood Services's bonuses thus could not be considered adequately documented unless Neighborhood Services maintained documents sufficient to show that its bonuses were paid pursuant to an "agreement" or "established plan," as required by 2 C.F.R. Pt. 230, App. B ¶ 8.j.

Both parties addressed that issue in their briefs to the Appeals Board. The Administration argued that Neighborhood Services's documents were inadequate because they failed to show that Neighborhood Services complied with written policies; in fact, the documents showed that Neighborhood Services disregarded those policies on several occasions. For example, the Administration explained, in FY 2010, Neighborhood services paid all of its non-management employees the same size bonuses, in violation of "the 2009 Plan." J.A. 251. Similarly, Neighborhood Services awarded bonuses to employees who had only received 'C' grades, which was "not consistent" with Neighborhood Services's policy "to reward '[consistent or] exemplary job performance.'" J.A. 252. In its reply brief, Neighborhood Services challenged that characterization of its documents, claiming that the documents showed Neighborhood Services's compliance with "its established policies." J.A. 282. As discussed in more detail in the next subsection, the Appeals Board ultimately sided with the Administration. While Neighborhood Services may have been unhappy with that decision, it cannot claim that it lacked notice or a chance to address the point.

## C.

Neighborhood Services also contends that the Appeals Board acted arbitrarily when it concluded that the performance bonuses were inadequately documented, despite the fact that

Neighborhood Services provided all of the documentation Board precedent required. Neighborhood Services explains that, in *Seaford Community Action Agency*, DAB No. 1433, 1993 WL 742548, at *3-4 (Dep't of Health & Human Servs. Aug. 17, 1993), the Board allowed reimbursement of most of the performance bonuses paid by a grantee who had provided "payroll registers, minutes of Policy Council meetings, evaluation sheets, and lists of awardees" showing that the bonuses were awarded to employees who had performed above-average work. Neighborhood Services insists that it provided at least as much documentation to support its performance bonuses as the grantee in *Seaford*, and as a result, it was arbitrary for the Board to hold that Neighborhood Services's bonuses were insufficiently documented. *See Etelson v. Office of Pers. Mgmt.*, 684 F.2d 918, 926 (D.C. Cir. 1982) ("Government is at its most arbitrary when it treats similarly situated people differently.").

As the Board recognized, however, the key question in this case is not whether Neighborhood Services submitted the same type of documents as the grantee in *Seaford*, but whether the documents in Neighborhood Services's files painted the same kind of picture as the documents at issue in *Seaford*. Answering that question in the negative, the Board noted that the documents in *Seaford* showed substantial compliance with the terms of the OMB Circular. By contrast, the documents submitted by Neighborhood Services were *prima facie* evidence that Neighborhood Services had entirely disregarded its bonus policy for several years in a row, in violation of 2 C.F.R. Pt. 230, App. B ¶ 8.j. Thus, it was reasonable for the Board to conclude that, unlike the grantee in *Seaford*, Neighborhood Services had not submitted documentation sufficient to show that it had complied with relevant rules and regulations. *See Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 216 (D.C. Cir. 2013) (suggesting that agency action is not

arbitrary if the agency offers good reasons for treating regulated parties differently).

Additionally, Neighborhood Services argues that the Appeals Board arbitrarily countenanced the Administration's "escalating demands for documentation." Appellant Br. 23. In its Disallowance Letter, the Administration contended that the bonuses were inadequately documented because Neighborhood Services had not submitted documents showing precisely how much money each employee received. The Disallowance Letter also faulted Neighborhood Services for failing to produce "plans of performance" to show how individual employees had performed over the course of the year. J.A. 82.

In its opening brief to the Board, Neighborhood Services laid out its response to the Disallowance Letter's concerns: It provided payroll documents showing the magnitude of each employee's bonus and clarified that it did not keep "individual plans of performance" for specific workers; instead, Neighborhood Services used a single matrix to reflect its evaluation of all employees. J.A. 77. Neighborhood Services submitted a copy of the matrix along with its brief.

Neighborhood Services contends that, after it thus responded to the Disallowance Letter, the Administration "moved the goalposts" and requested more records. Appellant Br. 23. The Administration countered before the Board that Neighborhood Services should have produced data sufficient to show how it had calculated each employee's matrix score. With its reply brief, Neighborhood Services provided sample data for one of its employees, but the Board held that the sample failed to show that the bonuses had been adequately documented. Neighborhood Services claims that, had it been given clear notice that Board would want to see the data

underlying the matrix scores, it could have provided that information, but the Board arbitrarily deprived Neighborhood Services of the opportunity to do so.

While it is true that the Administration requested one set of documents in the Disallowance Letter and then requested more in its brief to the Board, it was neither unlawful nor unfair for the Administration to proceed in that manner. Under Board precedent, the Administration is allowed to make new arguments and requests in its brief to the Board, so long as "there is [an] opportunity during the Board's process for the grantee to respond." *Neb. Health & Human Servs. Sys.*, DAB No. 1660, 1998 WL 354969, at \*5 (Dep't of Health & Human Servs. May 26, 1998). That rule tracks the requirements of the Due Process Clause, which guarantees regulated parties a meaningful opportunity to respond to the allegations against them. *See Partington v. Houck*, 723 F.3d 280, 289 (D.C. Cir. 2013) (Due Process Clause).

Indeed, it is a matter of simple logic that, when an agency points out apparent inconsistencies like those the Administration identified in Neighborhood Service's application of its incentive compensation policy, it is incumbent on the grantee to provide a coherent explanation. The particular documents capable of doing so might vary depending on the nature of the inconsistencies. Here, we need not determine precisely what type of documentation Neighborhood Services needed to produce; we can simply note that, if it had good answers as to why it paid all employees the same bonuses when its policy called for bonus amounts keyed to performance, or why employees with lower performance scores received the same or larger bonuses than those who scored higher, it was up to Neighborhood Services to make its case. Its failure was not for want of opportunity.

Neighborhood Services had multiple chances to submit individual performance evaluations, explanatory memos regarding the apparent disconnect between matrix scoring and bonus levels, declarations by staff involved in implementing the plan that described the process, or any other documents that could have responded to the Administration's request in its brief to the Appeals Board. Neighborhood Services could have submitted the relevant documents in its reply brief to the Board, or appended them to its Motion for Reconsideration of the Board's decision, but it did not. Remanding this case to give Neighborhood Services a third bite at the apple would only encourage grantees to make half-hearted responses to document requests, thereby encumbering the administrative process of ensuring compliance with federal regulations.

## D.

Finally, Neighborhood Services claims that the Board acted arbitrarily by considering whether Neighborhood Services's bonuses collectively satisfied the terms of the OMB Circular, rather than considering whether each individual bonus was consistent with the Circular. Neighborhood Services insists that, if "even one" of the incentive payments was reasonable, consistent with the 2009 Plan, and adequately documented, the Board should have allowed that payment. Reply Br. 1. Under the circumstances of this case, the Board reasonably held that a bonus-by-bonus analysis was unnecessary because Neighborhood Services's apparent wholesale failures to follow its plan affected all of the bonus payments.

As noted above, Neighborhood Services had an obligation to produce enough documentation to show that its bonus payments were paid pursuant to an "agreement" or "established plan," 2 C.F.R. Pt. 230, App. B ¶ 8.j, and the Board reasonably

concluded that Neighborhood Services failed to do so. As the Board acknowledged, Neighborhood Services had a written agreement or plan to pay performance bonuses to its employees. Under Board precedent, however, a written compensation agreement can be vitiated if an employer has a "pattern over a number of years of violating [it]," *Seaford*, DAB 1433, at \*4 n.6. Similarly, a "plan" to make performance bonuses may cease to qualify as a plan if it is not followed "consistently." 2 C.F.R. Pt. 230, App. B ¶ 8.j. The Board reasonably concluded that Neighborhood Services's documents raised a strong inference that the organization "failed to follow its compensation policies in many respects" over a number of years. J.A. 308. Thus, the documents failed to establish that Neighborhood Services had a functioning bonus agreement or plan in place. And without evidence of an agreement or plan that Neighborhood Services followed in practice, none of Neighborhood Services's bonuses were allowable. *See Seaford*, DAB 1433, at \*3-4.

\*\*\*

Because Neighborhood Services failed to produce documentation sufficient to show that it was awarding performances in accordance with the OMB Circular, we affirm the judgment of the district court.

*So ordered.*